UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BDO SEIDMAN LLP, | } | |
| | } | |
| Plaintiff, | } | |
| VS. | } | CIVIL ACTION NO. H-08-905 |
| | } | |
| ALLIANTGROUP, L.P., | } | |
| | } | |
| Defendant. | } | |

## OPINION & ORDER

Pending before the Court are Plaintiff BDO Seidman LLP ("BDO")'s Motion for Summary Judgment, and the response thereto.  Also pending is Defendant Alliantgroup LP ("Alliantgroup")'s Motion for Partial Summary Judgment.  For the reasons explained below, the Court DENIES Alliantgroup's Motion for Summary Judgment and GRANTS-IN-PART and DENIES-IN-PART BDO's Motion for Summary Judgment.

**I.       Background & Relevant Data.**

This case concerns whether Alliantgroup committed unfair competition under the Lanham Act, 15 USC § 1125(a)(1) when Alliantgroup contacted accounting firms that belonged to an association managed by BDO, and used the BDO name in connection with these marketing efforts.

BDO is an international business that provides accounting, tax and other consulting services.  Doc. 16 Exh. 1 at 2.  Separate and apart from its own business, BDO manages an association of 154 accounting firms and 56 firms that provide services to accounting firms named the BDO Seidman Alliance (the "Alliance").  Doc. 17 Exh. 1 at 7.  BDO determines membership in the Alliance after investigating the firm.  *Id*.  Membership fees range from $4,000 a year to $100,000 a year.  *Id*.  In exchange for membership BDO provided  a limited range of

services through the Business Resource Network ("BRN") to the Alliance.  Doc. 16 Exh. 1 at 2.

BDO also offered extra services to Alliance members, for which Alliance members would have

to pay compensation on top of their membership fees.  *Id*.  Members of the Alliance, however,

remain free to select third-parties unassociated with BDO to provide services to them.  Doc. 17

Exh. 1 at 11.  So for example, Alliance members could select a third party other than BDO to

provide services not already provided free through the BRN.

Alliantgroup is a national business that provides tax consulting services.   In

February, it began to contact Allliance members to advertise its tax consultancy on research and

development credits.   BDO also provides research and development credits advice to the

Alliance members, but this is not a free service included in BRN.  Thus, BDO and Alliantgroup

were effectively competitors in providing advice on research and development tax credits to the

Alliance.  Doc. 18 Exh. 1 at 12.

On or about February 8, 2008, Stan Lenart ("Lenart") of Alliantgroup called

Nancy Kridel of Smolin, Lupa & Co., P.A., which was an accounting firm located in New Jersey

and a member of the Alliance.   According to Alliantgroup, Lenart made the following

communication:

> Hi Nancy this is Stan Lenart with the Alliantgroup and I'm at 312-386-9770.  I
> am calling because you are part of the BDO Alliance and we are having great
> success with BDO Alliance firms, Nancy.  We are generating increased revenue
> for them without increasing their head count and a number of firms would be
> willing to vouch for us.
>
> Hillbart & King in PA
> Gaynor Donnely and DeRoche, Houston
> Kirkland, Ross, Murphy and Tap in Tampa
> And actually many more.
>
> Please return the call
> Stan Lenart 312-386-9770.

Doc. 18 Exh. 3.

On February 25, 2008, Lenart sent an email to Anne Eidschun of McBride, Shopa & Company, P.A., a CPA firm in Wilimngton, Delaware and Alliance member.  In a *post script* to the email, Alliantgroup again vaunted its references among Alliance members:

> We are currently getting very successful results with a number of BDO Seidman firms, including: Hill, Barth & King in Meadville, PA; Gainer, Donnelly & Desroches in Houston, Texas; Kirkland, Ross, Murphy & Tapp in Tampa, FL; Hausmaninger, Benoe, Lang, Alford & Geselowitz in Irvine, Ca; and many others … All of the aforementioned firms would be happy to be a reference for us.

Doc. 18 Exh. 4 at 1-3.

From early February until February 25, 2008, according to a BDO employee who was responsible, BDO received several email and telephone calls from Alliance members complaining that Alliantgroup's marketing efforts were "confusing" and "misleading" them. Specifically, BDO provided three declarations by Alliance members.  Ronald H. Burkett ("Burkett") was the managing partner of Burkett, Burkett, & Burkett, an accounting firm that was a member of the Alliance.  Doc. 16 Exh. 5 at 2.  Burkett testified Lenart left a voicemail referring to BDO and the Alliance and that Lenart "said Alliantgroup helps with the Alliance." *Id*.  According to Burkett, "I was confused concerning the relationship between Alliantgroup and the Alliance." *Id*.  After Lenart's voicemail, Burkett contacted BDO and because BDO assured him Alliantgroup was not associated with the Alliance, Burkett did not respond to Lenart. *Id*.

Charles H. Elter was Director of Taxation for McBride, Shopa & Co., an accounting firm that was a member of the Alliance.  Doc. 16 Exh. 6 at 2.  Elter reported that in February 2008 his firm received solicitations from Alliantgroup where Alliantgroup "implied it was part of the Alliance or in some way associated with the Alliance." *Id*.  Elter scheduled a

lunch meeting with Alliantgroup but later, realizing he had been "deceived" into thinking Alliantgroup was associated with the Alliance, he canceled. *Id*.

William R. Lazor was a shareholder in Kronick, Kalada, Berdy & Co., an accounting firm that was a member of the Alliance. Doc. 16 Exh. 7 at 2. Identically to Elter, Lazor claims Alliantgroup solicitations "implied that it was part of Alliance or associated with Alliance." *Id*. Lazor scheduled a conference call but canceled once he realized he had been "deceived." *Id*.

BDO also submitted as evidence of the confusion that arose from Alliantgroup's marketing several emails from other accounting firms throughout the United States. Doc. 16 Exh. 2. Some of these were made in response to BDO's inquiries about Alliantgroup's "misrepresentation" for their legal department. *Id*. at 3. Others originated with Alliance members and queried BDO on the link between BDO and Alliantgroup. *Id*. at 6.

In response to Alliantgroup's solicitations, on February 25, 2008, BDO sent out a mass email to "BDO Seidman CPA & BRN Firm Alliance Members." The email warned against Alliantgroup's allegedly deceptive practices and promoted instead BDO's services:

> Several BDO Seidman Alliance members have notified us that they have been approached by a firm named alliantgroup [sic], implying that they are endorsed and/or work with BDO Seidman, LLP and the BDO Seidman Alliance Program to provide specialty tax consulting and expertise. BDO Seidman, LLP is not sponsoring, has not approved and absolutely does not endorse Alliant [sic] to provide any tax consulting services to BDO Seidman LLP or the BDO Seidman Alliance.
>
> Our Alliance members have told us that alliantgroup's [sic] approach had been to mislead our Alliance members into thinking there is an agreement between this firm and our Alliance. In their cold calls to our Alliance firms, alliantgroup [sic] mentioned several BDO Seidman Alliance Members as "references." These Alliance members have confirmed subsequently that they did not authorize alliantgroup [sic] to use their names as references. Just to reiterate, there is absolutely no relationship between alliantgroup [sic] and BDO Seidman, LLP or

the BDO Seidman Alliance. And, utilization of such deceptive tactics would make me personally question if I would ever want to do business with such a firm.

BDO Seidman, LLP's National Tax Office ("NTO") includes a specialty practice dedicated to helping companies identify, document, and support initiatives such as R&D tax credits . . .

Doc. 16 Exh. 5 at 2.

Alliantgroup provided an April 2006 open letter of reference from Chris Allegretti ("Allegretti") the Managing Principal and CEO of Hill, Barth & King, LLC endorsing Alliantgroup. Doc. 18 Exh. B at 1-3. According to Michael Horwitz ("Horwitz"), the BDO representative who sent the mass email, he contacted Allegretti and Allgeretti told him he had not agreed to serve as a reference for Alliantgroup. Doc. 18 Exh. 6 at 8-9. Horwitz admitted to not contacting one of the other accounting firms used as a reference, Gaynor, Donnelly & Deroche. *Id*. Horwitz did claim he contacted Kirkland, Ross, Murphy and Tap and that this firm confirmed it had not agreed to serve as a reference for Alliantgroup. *Id*.

On March 20, 2008, BDO filed the instant action against Alliantgroup in this Court seeking an injunction preventing Alliantgroup from implying any connection with BDO. Alliantgroup filed a counter-claim on April 16, 2008, alleging that BDO's mass email to Alliance members had resulted in business disparagement, tortious interference with business relationships and defamation.

## II.        Summary Judgment Standard

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The substantive law

governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

Once the movant meets its burden, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." W*ebb v.*

*Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence.  *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994);  *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992).  Nor are pleadings summary judgment evidence.  *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075).  The non-movant cannot discharge his burden by offering vague allegations and legal conclusions.  *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990).  Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the non-moving party.  *Matsushita*, 475 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party.  *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988).  The non-moving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue.  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).   In reviewing evidence favorable to the party opposing a motion for

summary judgment, a court should be more lenient in allowing evidence that is admissible, though it may not be in admissible form.  *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1988).

## II.    Analysis.

### a.    Evidentiary Objections.

Alliantgroup seeks to strike portions of BDO's summary judgment evidence. Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. James*, 276 F.3d 754, 759 (5th Cir. 2002).

The declaration of Michael O' Hare ("O'Hare") states that "BDO Seidman is a well-known firm in the business and accounting worlds." The Court need not address the merit of evidentiary objections where the evidence objected to is established elsewhere so that the resolution of the objection would have no bearing on the merits of the motion.  Alliantgroup itself refers to BDO as an "international accounting, tax and consulting firm."  The fact that BDO has an international presence combined with the supporting evidence from the declarations of Elter, Burkett and Lazor who are clients of BDO located in three different states – South Carolina, Delaware and Pennsylvania - is sufficient confirmation that BDO is also "well-known in the business and accounting worlds."  Furthermore, Alliantgroup admits in its statement of facts that it attempted to market its products to a BDO-run organization that included over a hundred accounting firms across the country.

The declaration of O'Hare further states that BDO Seidman and the BDO Seidman Alliance "have become identified with our firm in the business and accounting worlds, and thus those terms have a secondary meaning that goes beyond the literal meaning of the

words." The Court need not address the evidentiary objection to facts amply admitted elsewhere, in part by Alliantgroup itself.  The declarations of Elter, Burkett and Lazor prove that they are accounting firms that did business with BDO Seidman as BDO Seidman. As for the BDO Seidman Alliance, Alliantgroup itself represents it attempted to market to members of the BDO Seidman Alliance as the BDO Seidman Alliance. The assertion that BDO and the Alliance are trademarks with secondary meaning is legal argumentation but as the merits of this case have nothing to do with the validity of BDO's trademarks, the Court need not address this objection.

The declaration of O'Hare further states that "The Alliance members told us that Alliantgroup's marketers were making references to BDO Seidman and the Alliance, thus creating the false impression that Alliantgroup was either part of the Alliance or sponsored by the Alliance." What the Alliance members told O'Hare is hearsay and thus his statement is inadmissible under Fed R. Evid. 801.

Burkett's declaration states "I was confused concerning the relationship between Alliantgroup and the Alliance."  Alliangroup argues this statement is conclusory. A statement is conclusory where no supporting evidence is offered for a conclusion. Although within all statements are inbuilt any number of obvious conclusions, to strike a statement as conclusory one would need to establish that the conclusion at issue short-circuited the processes of reasoning so as to render it unhelpful as evidence.  Burkett's conclusion deals with his state of mind about which Burkett can draw conclusions without the need for supporting evidence.

Elter's declaration states "Alliantrgoup mentioned BDO Seidman and the Alliance, and implied it was a part of the Alliance or associated in some way with the Alliance." Alliantgroup challenges this statement as conclusory and hearsay.  This statement is not conclusory because it is not of the sort to need supporting evidence: Elter was the recipient of

Alliantgroup's marketing and could reach a conclusion as to its nature without elaboration. Admittedly, had he recalled the exact nature of the communication this would have been helpful supporting evidence, but to require such specificity of recall of one marketing conversation is not necessary to make Elter's statement admissible.  Furthermore, the statement is not hearsay as it is the admission of a party opponent under Fed. R. Evid. 801(d)(2).

Elter futher states "In my discussion with a representative of Alliantgroup, I mentioned BDO Seidman and the BRN, and the representative did nothing to dispel my belief that Alliantgroup was associated with the Alliance."[1]  This statement is not conclusory as it is a description of a conversation and is not of the kind to require supporting evidence. Furthermore, it is not hearsay as it is the admission of a party opponent under Fed. R. Evid. 801(d)(2).

Elter's declaration further states "Before the lunch took place [that Elter scheduled with Alliantgroup after Alliantgroup contacted Elter], we realized that we had been deceived and that Alliantgroup was not actually associated with the Alliance."  Again this statement only contains obvious conclusions that do not require supporting evidence. Furthermore, they are not hearsay as they contain no statements other than those of the declarant. *See* Fed R. Evid. 801(c).

Similarly, Alliantgroup challenges portions of Lazor's declaration as conclusory. Lazor stated "Alliantgroup mentioned BDO Seidman and the Alliance, and implied that it was a part of the Alliance or associated in some way with the Alliance," and "Before the conference call took place [that Lazor scheduled with Alliantgroup after Alliantgroup contacted Lazor,] I realized that we had been deceived and that Alliantgroup was not associated with the Alliance."

---

[1]     The "BRN" is the Business Resource Network, a service provided to Alliance members.

The statements, like Elter's statements, are not conclusory, as not requiring supporting evidence for a non-obvious conclusion.

As further evidence of the confusion engendered by Alliantgroup's marketing, BDO submitted, as part of its summary judgment motion, several emails from Alliance members relating how they had been contacted by Alliantgroup and been confused as to the relationship between Alliantgroup and BDO. Alliantgroup seeks to strike the emails on the ground of hearsay. To the extent these show BDO's notification that Alliance members were confused, they are not used for the truth of the matter asserted, and, thus, are not hearsay under Fed. R. Evid. 801. Furthemore, the emails may be used to show the Alliance members' state of mind under the state of mind exception to hearsay. *See* Fed. R. Evid 803(3).

### b. Section 43(a) Lanham Act Violation.

BDO argues that Alliantgroup's marketing efforts in February to Alliance members violated the "unfair competition" provision of the Lanham Act, 15 USC § 1125(a)(1) ("Section 43(a)"). BDO requests summary judgment on its claim. Alliantgroup also requests summary judgment finding that the claim fails as a matter of law. Because genuine material issues of fact need to be resolved, summary judgment for both parties is denied. As will be explained below, if Alliantgroup's marketing was as it claims it was, Alliantgroup would be entitled to a nominative fair use defense to BDO's Section 43(a) claim. Contacting Alliance members to market services by claiming references among Alliance members does not amount to unfair competition. On the other hand, if as BDO claims, Alliantgroup claimed direct affiliation with BDO or the Alliance rather than just references from specific Alliance members, this would make out a unfair competition claim.

The Lanham Act was intended to make "actionable the deceptive and misleading

use of marks," and "to protect persons engaged in . . . commerce against unfair competition." 15 USC § 1127 [15 USCS § 1127]. While much of the Lanham Act addresses the registration, use, and infringement of trademarks and related marks, § 43(a), 15 U.S.C. § 1125(a) [15 USCS § 1125(a)] is one of the few provisions that goes beyond trademark protection. As originally enacted, § 43(a) created a federal remedy against a person who used in commerce either "a false designation of origin, or any false description or representation" in connection with "any goods or services." 60 Stat 441.  As the Second Circuit accurately observed with regard to the original enactment, however--and as remains true after the 1988 revision--§ 43(a) "does not have boundless application as a remedy for unfair trade practices," *Alfred Dunhill, Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (1974). "Because of its inherently limited wording, § 43(a) can never be a federal 'codification' of the overall law of 'unfair competition,'" 4 J. McCarthy Trademarks and Unfair Competition § 27:7, p 27-14 (4th ed. 2002) (McCarthy), but can apply only to certain unfair trade practices prohibited by its text.

The Supreme Court has addressed the meaning of Section 43(a). *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 123 S. Ct. 2041, 156 L. Ed. 2d 18 (2003). At issue in *Dastar* was whether a producer of a new video production violated Section 43(a) by not acknowledging reliance on an original television production. *Id*. at 25-28. Although the specific language of Section 43(a) at issue in *Dastar* was "origin of goods," the Court explained that Section 43(a) is "one of the few provisions that goes beyond trademark protection." *Id*. at 29. The language of Section 43(a) is broader than much of the Lanham Act in that it "prohibits actions like trademark infringement that deceive consumers and impair a producer's goodwill." *Id*. at 32.  Thus, although the parties have disputed BDO's trademark status, the Court need not concern itself with the trademark status of BDO Seidman or the BDO Seidman Alliance.

Instead the question is one of the interpretation of Section 43(a) alone.  Section 43(a) states:

> (a) Civil action.
>   (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>     (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>     (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>   shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 USCS § 1125.

The key language is the prohibition against representations of fact that are "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another . . . ." 15 U.S.C. § 1125(a)(1).  BDO relies on the statements by several Alliance members, i.e. the declarations of Burkett, Elter and Lazor,  that Alliantgroup misrepresented that it was associated with BDO or the Alliance in its marketing efforts to Alliance members.  Furthermore, the emails from other Alliance members nationwide show Alliantgroup's marketing caused confusion as to its exact association with BDO.  Assertedly, if Alliantgroup had made such misrepresentations, they would be harmful to BDO.  BDO is a competitor of Alliance in the provisions of tax consultancy advice to accounting firms, specifically how to obtain research and development tax credits.  As the communications from Alliance members to BDO show, if Alliance members believed that Alliantgroup was associated with either BDO or the Alliance through sponsorship or affiliation, they were more likely to be

receptive to Alliantgroup's marketing efforts.  Upon discovering that Alliantgroup had no

official connection to either BDO or the Alliance, several Alliance members lost interest in

Alliantgroup's services.

   If Alliantgroup had gained Alliance members' interest through a false claim to

association with BDO or BDO's Alliance services, this would be a Section 43(a) violation.  For

example, the Fifth Circuit has held that misrepresentations by a defendant fast-food distributor,

Sterling, that it was the exclusive distributor for plaintiff fast-food franchisor Schlotzsky, which

misrepresentations allowed it to gain dominance in its relevant market and interfere with

Schlotzky's selection of its actual exclusive distributors, violated Section 43(a) of the Lanham

Act.  *Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distrib. Co.*, 520 F.3d 393, 400 (5th Cir.

2008).  Like Sterling's claim to be exclusive distributor, these alleged misrepresentations would

piggyback off of BDO's goodwill with consumers by aligning Alliantgroup directly with BDO

and the Alliance.[2]

   Alliantgroup's represents it never suggested affiliation with BDO and the

Alliance, however.  Instead, according to Alliantgroup, it only made nominative fair use of the

terms BDO and Alliance in its marketing, which is an absolute defense to an unfair competition

claim.  Nominative fair use is a complete defense to Section 43(a) unfair competition and occurs

where the defendant only uses the plaintiff's mark for reference, or for comparison, or for

criticism.  *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1098-1099 (9th Cir.

2008).  In fact, without such a defense, trademarks would gag fair competition, so it has become

a bedrock principle of the Lanham Act.  *See, e.g.*, *August Storck K.G. v. Nabisco, Inc.*, 59 F.3d

---

[2]   Alliantgroup argues that BDO Seidman fails to meet the requirements of § 43(a) because
the marketing was not made in "commerce."  Alliantgroup argues that because they never
misrepresented affiliation with  BDO Seidman, their use of BDO Seidman's name was not
commercial.  This repackages their fair use defense discussed below, and is addressed there.

616, 617-18  (7th Cir. 1995); *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 306-09 (9th Cir. 1992); *see also* RESTATEMENT, supra, § 20 cmt. b, at 209-10.; 3 MCCARTHY ON TRADEMARKS, supra, § 25:51-:52.  In the two 'sample' communications Alliantgroup submitted, Lenart, a marketer for Alliantgroup, represented to Alliance members that Alliantgroup had success working with specific Alliance members, who were willing to serve as references to Alliantgroup's services. For competitor A to tell the customers of competitor B that some of B's customers enjoyed the services of A is nominative fair use by A of B's trademark.

BDO argues that fair use does not apply because its Alliance member customers were actually confused relying on the declarations of Elter, Lazor and Burkett.  It relies on a traditional analysis of trademark confusion using the "digits of confusion."  This "there is no smoke without a fire" approach, however, is, in the context of summary judgment, far from conclusive.  As this Circuit has held where the confusion is not between two trademarks, but by the use by plaintiff and defendant of the same trademark, the "digits of confusion" are not applicable.  *Paulsson Geophysical Servs. v. Sigmar*, 529 F.3d 303, 310-311 (5th Cir. 2008).  Furthermore, BDO's argument ignores the whole *raison d'etre* of fair use, which is to protect the justifiable use of trademarks.  If the free use of fair marketing language was prevented just because a competitor could locate some recipients of that marketing who misunderstood its meaning, the application of trademark law would become detached from its moorings.  Thus, "[f]air use is protected even if confusion is likely."  *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 484 (5th Cir. 2004) (citing to *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 547 (5th Cir. 1998)).  If Burkett, Lazor and Elter did actually understand correctly, however, and Alliantgroup did market an affiliation with BDO or the Alliance, then Alliantgroup would have

made more than a nominative fair use of BDO's marks and committed unfair competition.  Thus, this case turns on genuine issues of material fact as to what was the actual content of Alliantgroup's marketing.  In conclusion, then, summary judgment is denied to both BDO and Alliantgroup on the Lanham Act unfair competition claim.

**c.      Texas Anti-Dilution Statute**

BDO makes a claim under Texas Business and Commercial Code § 16.29 for injury to business reputation or trade name or mark.  Alliantgroup seeks summary judgment that the claim fails as a matter of law.  The resolution of this claim turns on the same factual disputes as the Lanham Act unfair competition claim, therefore summary judgment is inappropriate.

> "A person may bring an action to enjoin an act likely to injure a business reputation or to dilute the distinctive quality of a mark registered under this chapter or Title 15, U.S.C., or a mark or trade name valid at common law, regardless of whether there is competition between the parties or confusion as to the source of goods or services."

Tex. Bus. & Com. Code § 16.29.  In order to succeed on a dilution claim, BDO must show that it owns a distinctive mark and that there is a likelihood of dilution. *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1564 (S.D. Tex. 1996), *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998) (citing *Hormel Foods Corp. v. Jim Henson Productions, Inc.*, 73 F.3d 497, 506 (2nd Cir. 1996)).  There are not many cases interpreting the Texas Anti-Dilution statute, so the Fifth Circuit has previously looked to "the general law of dilution . . . in construing the Texas Statute." *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1081 (5th Cir. 1997). A likelihood of dilution can be caused by either "1) 'blurring,' a diminution in the uniqueness or individuality of the mark, or 2) 'tarnishment,' an injury resulting from another's use of the mark in a manner that tarnishes or appropriates the goodwill and reputation associated with the plaintiff's mark." *Id.* (citations omitted).  If Alliantgroup had misrepresented affiliation with BDO's marks, which are genuine

issues of material fact, this would "appropriate the goodwill and reputation associated with" BDO's marks and be "likely to injure" BDO's reputation.  Thus, Alliantgroup does not succeed in dismissal of this claim.

Alliantgroup further argues that the dilution claim must fail because BDO cannot prove damages as it has not submitted evidence that any Alliance members chose Alliantgroup because of its alleged misrepresentations in its marketing efforts.   Actual damages in a dilution context refer to dilution of the plaintiff's trademark.  For example, in *E. & J. Gallo Winery v. Spider Webs, Ltd.*, 286 F.3d 270, 271-272 (5th Cir. Tex. 2002), defendant Spider Webs Ltd. registered plaintiff E. & J. Gallo Winery's name and then used this website to criticize plaintiff. The Fifth Circuit held this was sufficient injury under the Texas anti-dilution statute.  *Id*. at 279. It was not necessary for the winery to demonstrate it had lost customers due to the website's disparagement.  *Id*.  The probability of the effect of the disparagement was enough.  *Id*.  Thus, the lack of evidence of Alliance members switching over to Alliantgroup is not grounds for summary judgment in favor of Alliantgroup.

### c.   Defamation.

Alliantgroup brings a claim for defamation against BDO.  Allegedly BDO defamed Alliantgroup when it sent out a mass email to the Alliance members accusing Alliantgroup of using "deceptive tactics" in their marketing.  Furthermore, in the same email BDO warned Alliance members that Alliantgroup was using false references, stating "these Alliance members [which Alliantgroup used as references] have confirmed subsequently that they did not authorize Alliantgroup to use their names as references."  Both Alliantgroup and BDO seek summary judgment on the defamation claim.  BDO argues summary judgment is proper because the statements are true and, therefore, non-actionable; the 'deceptive tactics'

statement is opinion and, therefore, non-actionable; and the statements are made to those with a

common business interest and, therefore, privileged.

        For a plaintiff who is not a public figure to establish a defamation claim under

Texas law, the plaintiff must prove that the defendant: (1) published a statement; (2) that was

defamatory concerning the plaintiff; (3) while acting negligently with regard to the truth of the

statement. *Nasti v. CIBA Specialty Chems.*, 492 F.3d 589, 596 (5th Cir. Tex. 2007) (citing to

*WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)).  "In suits brought by private

individuals, truth is an affirmative defense to slander*."  Randall's Food Mkts. v. Johnson*, 891

S.W.2d 640, 646 (Tex. 1995).  As discussed above, with regards to the Lanham Act unfair

competition claim, there are genuine issues of material fact as to whether the marketing was

deceptive.  There are also genuine issues of material fact as to the truth or falsity of

Alliantgroup's references.  Alliantgroup submitted a letter of reference from Hill, Barth & King,

LLC, one of the accounting firms it had touted in its marketing.  On the other hand, BDO's

representative testified he contacted  Hill, Barth & King LLC and that the firm denied serving as

a reference.  BDO's representative also admitted to not contacting Gaynor, Donnelly & Deroche,

another firm that Alliantgroup used as a reference, to confirm the reference was false before

BDO claimed all the references were false.[3]  (BDO also claimed to have contacted Kirkland,

Ross, Murphy and Tap , which confirmed that it did not agree to serve as a reference.) Thus,

BDO's email is not non-actionable as true.

        "An essential element of libel is that the alleged defamatory statement be a

statement of fact rather than opinion."  *Falk & Mayfield L.L.P. v. Molzan*, 974 S.W.2d 821, 824

(Tex. App. 1998)(internal quotations omitted).  Otherwise the statement would be absolutely

---

[3]      BDO did not submit evidence concerning the validity of the references.  The evidence
referred to by the Court was obtained from the record.

protected by the First Amendment of the United States Constitution and Section 8, article I, of

the Texas Constitution.  For example, in *Molzan*, the Texas Court of Appeals considered whether

defendant putting a sign on his lawn accusing plaintiff law firm of "lawsuit abuse" was a

statement of opinion that could not be defamatory.  *Molzan*, 974 S.W.2d at 824.  The court in

that case found that the accusation of "lawsuit abuse" was an "individual judgment" such as

finding someone "ugly, scurrilous, or disgusting."  *Id*.  This made it opinion not fact.  *Id*.  Unlike

*Molzan*, when BDO accused Alliantgroup of "deceptive tactics," this was not a individual

judgment.  BDO put forth as objective truth that Alliantgroup was misrepresenting its association

with BDO and the Alliance.  The "deceptive tactics" statement was at the conclusion of an email

which stated that Alliantgroup was falsely claiming to be endorsed by BDO and falsely claiming

to be endorsed by several Alliance members.  As such, it is inextricably intertwined with those

factual assertions and is a reinforcement of those factual assertions.  Although only calling

Alliantgroup "deceptive" might arguably be opinion, in this context, where BDO concluded

Alliantgroup used "*such* deceptive tactics" this is a statement of verifiable fact.  Thus, BDO's

email is not non-actionable as opinion.

        "A qualified privilege to make a statement exists when the person making the

statement makes it in good faith on a subject matter in which the speaker has a common interest

with the other person."  *Saudi v. Brieven*, 176 S.W.3d 108, 118 (Tex. App. 2004).  For example,

in *Saudi*, the court found a common interest privilege when defendant Captain Brieven, who

owned a shipping operations company that provided services to plaintiff Captain Saudi's

employer, called this employer to warn him that Captain Saudi was charging items to his

employer's account without permission.  *Id*.  Captain Brieven and Captain Saudi's employer had

a common business interest in preventing thievery from their joint business operations.  *Id*. *Saudi*

is analogous to the facts in this case.  Here, too, BDO and the Alliance members have a common business interest.  BDO provides services to Alliance members through its Business Resource Network.  Thus, BDO and Alliance members have a shared interest in ensuring third parties do no falsely claim to be associated with BDO or the Alliance.  Such misrepresentations would take clients away from BDO and would deceive Alliance members into paying for services that are not guaranteed with the goodwill that comes from belonging to the Alliance.

"The [common interest] privilege is abused if the statement is made with actual malice--that is, it is made with knowledge of its falsity or with reckless disregard as to its truth." *Saudi,*176 S.W.3d at 118.  "[W]hen the defendant moves for summary judgment, the defendant has the burden of proving absence of malice."  *Martin v. Southwestern Elec. Power Co.*, 860 S.W.2d 197, 199 (Tex. App. 1993).  For example, in *Martin*, the court of appeals found no malice when the president of defendant electric company warned his foremen of unsafe work practices citing in particular to plaintiff employee and the president based his comments about the employee on an investigation report and word-of-mouth.  *Id*. at 199-200.  As in *Martin*, there is no malice in this case because BDO relied on its own investigation into Alliantgroup's marketing, as well as word-of-mouth, which revealed that several Alliance members believed Alliantgroup had misrepresented its association with BDO and the Alliance.

Alliantgroup argues BDO acted with malice because BDO admits it did not contact Gaynor, Donnelly & Deroche ,one of three accounting firms, before claiming that "these Alliance members [which Alliantgroup used as references] have confirmed subsequently that they did not authorize Alliantgroup to use their names as references."  BDO contacted two of the firms to confirm the references were false: Hill, Barth & King LLC and Kirkland, Ross, Murphy and Tap.  Thus, the worst that can be said is that BDO assumed that the third of three accounting

firm references would also prove to be false.  Thus, while it is true there statement was not

strictly true, it was substantially so and not made with reckless disregard of the truth.  This is

especially so because BDO acted in the context of being informed by numerous Alliance

members that Alliantgroup had been generally "deceptive."

Thus, because BDO benefits from the common interest privilege and the evidence

establishes BDO did not act with actual malice, the Court grants BDO summary judgment and

denies Alliantgroup summary judgment on Alliantgroup's defamation claim.

### d.  Business Disparagement and Tortious Interference with Contract.

Both BDO and Alliantgroup seek summary judgment on Alliantgroup's counter-

claims for business disparagement and tortious interference with contract.  Both claims are based

again on BDO's stating to Alliance members that Alliantgroup was "deceptive" and

recommending that Alliance members not use Alliantgroup's services because Alliantgroup

allegedly used false references.

"The general elements of a claim for business disparagement are publication by

the defendant of the disparaging words, falsity, malice, lack of privilege, and special damages."

*Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987).  Unlike defamation, an

action for business disparagement will only lie if the plaintiff can demonstrate actual malice on

the part of the defendant when the injurious falsehood was made.  *Id.*  As discussed above,

however, the evidence before the Court demonstrates that BDO did not act with actual malice

when it stated Alliantgroup was deceptive and used false references.  Thus, Alliantgroup's claim

for business disparagement fails as a matter of law.

The elements for a claim of tortious interference a prospective business

relationship are: (1) a reasonable probability that the plaintiff would have entered into a business

relationship; (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference.  *Baty v. Protech Ins. Agency*, 63 S.W.3d 841, 860 (Tex. App. 2001).  As element two denotes, this claim requires the commission of an independent underlying tort.  It appears, although Alliantgroup does not specify, that the only two prospects for underlying torts are the defamation and business disparagement claims, which are both meritless.  For this reason, the claim of tortious interference with prospective business relations must also fail as a matter of law.

### III.   Conclusion.

Accordingly, it is hereby ORDERED that both BDO Seidman and Alliantgroup's Motion for Summary Judgment as to the Section 43(a) Lanham Act claim are DENIED;

And, it is further ORDERED that Alliantgroup's Motion for Summary Judgment as to the Texas Anti-Dilution Statute claim is DENIED;

And, it is further, ORDERED that, with regards to Alliantgroup's claims for defamation, business disparagement and tortious interference with prospective business relations, BDO Seidman's Motion for Summary Judgment is GRANTED and Alliantgroup's Motion for Summary Judgment is DENIED.

SIGNED at Houston, Texas, this 11th day of May, 2009.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE